[No. 67. Third Appellate District.—September 23, 1905.]

A. ALPER et al., Appellants, v. PATRICK TORMEY et al., Respondents; L. C. WITTENMYER, as Assignee of Union Stock Yard Company, an Insolvent Debtor, Intervener, Respondent.

SALE OF STOCK-YARD BY ASSIGNEE OF INSOLVENT—DISPUTE AS TO FIXTURES—COMPROMISE—CONVEYANCE—RECITALS—STEEL RAILS NOT INCLUDED.—Where the assignee of an insolvent corporation sold its stock-yard with all buildings, structures, tracks, and appurtenances, and where, upon a dispute as to whether certain articles were "personal property not sold," or were "fixtures," a compromise was allowed pursuant to a stipulation referring it to the court, which permitted an admission in the conveyance that all property in and about the premises shall pass as fixtures with the realty; *held*, that a conveyance reciting a sale of "all property used in connection with" the stock-yard company, and an agreement that all "personal property in and about the buildings is to be considered as fixtures," did not pass sixty tons of steel rails not on the premises, and far removed from any buildings or tracks, of the existence of which the assignee was ignorant, and which were not included in the stipulation referring the dispute, and were listed for taxation by the vendee as "old iron."

APPEAL from an order of the Superior Court of Contra Costa County denying a new trial. William S. Wells, Judge.

The facts are stated in the opinion of the court.

Louis H. Brownstone, for Appellants.

W. S. Tinning, for Intervener, Respondent.

R. H. Latimer, for Patrick Tormey, Respondent.

McLAUGHLIN, J.—This is an action to recover sixty tons of steel rails. At the time the action was commenced the property in controversy was in the possession of defendant Tormey, but at the trial he expressly disclaimed all interest in the rails. Subsequent to the commencement of the action defendant Wittenmyer, as assignee of the Union Stock Yard Company, an insolvent debtor, filed his complaint in intervention and set up his claim to the possession and ownership of

said rails as such assignee. Judgment was entered in favor of the intervener, and plaintiffs appeal from an order denying their motion for a new trial. Appellants contend that the evidence is insufficient to sustain the findings, and the question thus presented, boiled down to its essence, involves the ownership of the rails here in controversy. It is admitted that the rails were owned by the insolvent corporation, and passed to the intervener by virtue of the assignment to him. But it is claimed that they were included in a sale of certain property of such corporation made by the assignee to plaintiff Alper. At the time the action was commenced, the rails were lying upon land owned by defendant Tormey. They had been brought there and, as he put it, "stored" on the land with his consent. The Union Stock Yard Company owned a plant which covered about thirty-five acres, and in connection therewith operated spur tracks which passed over Tormey's land. These rails were not laid, but were lying on the ground about fifty feet from such tracks, at a point about three hundred feet from the line of the Union Stock Yard Company's property. The undisputed facts touching the sale out of which this litigation arose may be briefly stated as follows:—

On November 12, 1900, the intervener, as assignee, sold to plaintiff Alper, all the right, title, and interest of said insolvent, and said assignee in and to certain blocks of land in Rodeo, Contra Costa County, "together with all the buildings, machinery, and fittings, corrals, pens, sheds, and appurtenances now erected or in process of erection upon said blocks, and all and every the railroad tracks and railroad superstructures, which have heretofore been built by the Union Stock Yard Company of San Francisco, . . . and used or intended to be used in connection with the improvements and machinery in said blocks." This sale was confirmed by the court, but disputes arose touching the payment of taxes, and "whether certain property in and upon the above-described premises and used in connection with the business formerly carried on there was *personal property not sold at said sale,*" or "fixtures passing with the freehold, said property consisting among other things of two safes, tools and traveling hooks." On December 19, 1900, the parties entered into a stipulation embodying the foregoing facts, and reciting that

the matters in controversy should be submitted to the court for consideration. Two days later the assignee filed a petition for leave to compromise such disputes, and on December 22d the court made its order authorizing a compromise pursuant to the terms of.the stipulation, and the delivery of a conveyance of the assignee's interest in the real property sold, with an admission that "all of the property *in and about said premises* shall pass as fixtures with said realty." Thereupon said intervener executed and delivered to Alper an instrument reciting that intervener had sold all of his right, title, and interest in and to "*all property* used in connection with the Union Stock Yard Company of San Francisco unto A. Alper, and has agreed that all property which might possibly be considered under the circumstances as personal property *in and about the buildings* is to be considered as fixtures, and as passing with the real property." It is admitted that at the time of the sale and compromise, the assignee did not know of the existence of the rails in controversy. It is also conceded that plaintiffs jointly own the property acquired by virtue of such sale.

It is clear from the foregoing statement, that the rails did not pass to plaintiffs. It cannot be pretended that anything more than real property, and that which ordinarily passes with real property, was included in the sale originally, nor can it be said that all personal property passed by virtue of the compromise.

The stipulation entered into by the parties shows on its face that such was not the fact. The dispute which led to the compromise, as far as such dispute is germane to the problem before us, involved only the question whether certain property in and about the premises was personal property "*not sold at said sale*," or was to be considered as "fixtures passing with the freehold." If all of the personal property had been included in the sale it is difficult to imagine how a dispute as to the "fixtures" could be possible. If such was the understanding, it is equally difficult to guess why "personal property not sold at said sale" was mentioned in the stipulation, upon which the compromise was based.

Great stress is placed upon the words "all property," contained in the instrument executed by the assignee pursuant to the order authorizing the compromise. It is said that this.

language is comprehensive enough to include all of the personal property. Waiving the proposition that the compromise could not be made broader than the authorization, the words relied upon must be construed in the light of surrounding facts and circumstances. So construed it is clear that such words could only refer to the real property, and to personalty in and about the buildings, which was to be considered as included in the term "fixtures." These rails were not even on the land. They were fifty feet from any of the spur tracks used by the insolvent, and far removed from any of the buildings. The argument as to the *intent* of the parties is far from convincing. We cannot understand how the assignee could have intended to include specific personal property, worth at least two thousand dollars, when he was ignorant of the existence of such property. Nor can we understand how such intent could exist, when such property was not mentioned during the dispute nor in the stipulation. It is evident that the plaintiffs did not class the rails as "fixtures," for the following year, at their request, such property was assessed as personal property under the designation of "old iron."

The order is affirmed.

Buckles, J., and Chipman, P. J., concurred.